**WO**

JDN

NOT FOR PUBLICATION

# IN THE UNITED STATE S DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce A. Gamble, | No. CV 07-0908-PHX-GMS (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Officer Whipple, | |
| Defendant. | |

Plaintiff Bruce A. Gamble brought this civil rights action under 42 U.S.C. § 1983 against City of Mesa Police Officer Corey Whipple (Doc. #5). Before the Court is Defendant's Motion for Summary Judgment (Doc. #74), which is fully briefed (Doc. ##86, 88).

The Court will grant the motion in part and deny it in part.

**I.    Background**

In Count I of his First Amended Complaint, Plaintiff alleged that for about 11 months, Defendant intentionally violated Plaintiff's civil rights "by threats, harassment and physical abuse" (Doc. #5 at 3a). Plaintiff claimed that Defendant repeatedly arrested him for criminal trespass and that during the last arrest—for aggravated assault—on January 14, 2007, Defendant intentionally slammed Plaintiff's ankle in a car door. Plaintiff alleged that he asked Defendant to "let me get my legs in the car," to which Defendant responded "shut [your] black ass mouth" (id. at 3b). Plaintiff asserted that Defendant consistently made discriminatory racial slurs against him, including during the January 2007 arrest (id. at 3a-

3b). Plaintiff identified his count as a racial discrimination claim (id. at 3a ¶ 2).

In Count II, Plaintiff further described the January 14, 2007 arrest for aggravated assault (id. at 4). Plaintiff stated that had been hired by Rick, owner of a pawn shop on Country Club Drive in Mesa, Arizona, to clean the lot (id. at 1, 4). Plaintiff alleged that on January 14, he was across the street from the pawn shop when he saw an unfamiliar sport utility vehicle drive onto the pawn shop lot, so he picked up a pipe and approached the vehicle (id. at 4). Plaintiff stated that it turned out to be Rick—the pawn shop owner—and his son in their new sport utility vehicle. According to Plaintiff, the owner thanked Plaintiff for checking on his property, and then Plaintiff headed back across the street, where Defendant approached him. Plaintiff alleged that Defendant handcuffed him, used racial slurs, and proceeded to place him in the police car and slam the door on his leg. Plaintiff stated that he was released from jail after three days, and upon release, learned from the "so-called" victim—Ron Baker—that Defendant forced him to make a false charge against Plaintiff. Plaintiff claimed that the charge against him was dropped by prosecutors. He alleged that he was falsely arrested in violation of his due process rights (id. at 4).

From these allegations, the Court recognized three claims for relief: (1) a discrimination claim under the Fourteenth Amendment's Equal Protection Clause; (2) an excessive force claim under the Fourth Amendment; and (3) a false arrest claim under the Fourth Amendment (Doc. ##6, 30).[1] See Alvarez v. Hill, 518 F.3d 1152, 1157-58 (9th Cir. 2008) (a complaint need not identify the statutory or constitutional source of a claim; it need only set forth factual allegations supporting a claim for relief).

//
//
//

**II.     Motion for Summary Judgment**

---

[1] The false arrest claim was initially dismissed on the ground that the claim had not yet accrued (Doc. #6). The Court later reinstated the claim under Wallace v. Kato, 549 U.S. 384 (2007), which came out shortly before Plaintiff's case was initiated and which established that a false arrest claim accrues at the time of the arrest (see Doc. #30).

- 2 -

**A.     Defendant's Motion**

*1. Factual Contentions*

Defendant's summary judgment motion is supported by his separate Statement of Facts (DSOF), which sets forth detailed facts describing the Mesa Police Department's Trespass Enforcement Program and all of Plaintiff's contacts with Defendant and other Mesa police officers during 2006-2007 (Doc. #75, DSOF ¶¶ 3-132).[2] The relevant facts are as follows:

The Mesa Police Department instituted a Trespass Enforcement Program that allowed business owners to sign letters authorizing Mesa police officers to arrest trespassers on their properties (id. ¶¶ 3-5). Defendant arrested Plaintiff for trespassing or cited and released him for trespassing on five occasions from 2006 through January 2007: May 19, 2006; October 28, 2006; December 2, 2006; January 1, 2007; and January 14, 2007 (id. ¶¶ 11, 17, 31, 33-34, 119). During these encounters, Defendant did not use any racial slurs or racially derogatory terms (id. ¶ 45). Nor did Defendant ever threaten to withhold police protection to any property owners for refusing to participate in the Trespass Enforcement Program (id. ¶ 44).

On January 14, 2007, at approximately 7:00 p.m., Defendant was dispatched to North Country Club Drive in Mesa on a report that a subject was threatening a person with a lead pipe; the description of the subject matched Plaintiff (id. ¶ 73). Officer Bake arrived at the location just before Defendant (id. ¶ 74). Immediately upon his arrival, Defendant saw Plaintiff, who had a lead pipe in his hand and appeared to be walking away from someone (id. ¶¶ 78-79). Defendant exited his car and yelled for Plaintiff to drop the pipe and get on the ground (id. ¶ 80). Plaintiff eventually dropped the pipe, and Defendant and Bake

---

[2]DSOF is supported by Defendant's affidavit and the affidavits of six other Mesa police officers and a Mesa Police Department employee (Doc. ##75-80, Exs. 1-2, 5-6, 8, 21-23); copies of court and conviction records from the Municipal Court of the City of Mesa and from Maricopa County Superior Court (id., Exs. 3-4, 7, 9-11, 15); copies of jail and hospital medical records (id., Exs. 12-14); interrogatories and responses thereto (id., Exs. 17-18); the affidavit of James Blair, Deputy Maricopa County Attorney (Doc. #80, Ex. 16); the affidavit of Norma Marin, a former Mesa apartment manager (id., Ex. 19); and the affidavit of Carmina Romero, manager of Ace Check Cashing (id., Ex. 20).

1 | handcuffed him and checked him for other weapons, none of which were found (id. ¶¶ 81-82, 85-86). No force was necessary to secure the cuffs (id. ¶ 84).

Defendant then placed Plaintiff, who was not struggling, into the patrol car (id. ¶¶ 87-88). As Defendant was closing the door, Plaintiff stuck his legs back out, and the door may have hit Plaintiff's legs (id. ¶¶ 89-90). Plaintiff did not tell Defendant that his legs were out of the car (id. ¶ 95). The door did not close hard enough to cause injury, and Plaintiff made no complaints of injury or pain (id. ¶¶ 92-93, 95). Defendant did not slam the door or intentionally close it on Plaintiff's legs (id. ¶ 94). Nor did Defendant tell Plaintiff to "shut [his] black ass mouth" (id. ¶ 96).

Defendant stayed with Plaintiff while Officer Bake contacted the alleged victim, who identified himself as Ron Baker (id. ¶¶ 106-107). After Bake spoke to Ron Baker and reported back to Defendant, Defendant tried to get Plaintiff's side of the story, but Plaintiff would not talk about the incident (id. ¶ 116). Plaintiff was uncooperative and cursed at Defendant throughout their contact (id. ¶ 117). Defendant did not curse at Plaintiff or use any racial slurs (id. ¶ 118).

Defendant found probable cause to arrest Plaintiff for aggravated assault (id. ¶ 119).

Another officer, Officer Palmer, transported Plaintiff to the Maricopa County Jail at approximately 9:00 p.m. (id. ¶ 124). During transport, Plaintiff walked without assistance and he made no complaint about any injuries or about Defendant (id. ¶ 126). Plaintiff was released from jail on January 17, 2007 (id. ¶ 148). For the three days that he was in jail, Plaintiff was not issued crutches, and he received no treatment for his ankle (id. ¶ 149).

On January 17, 2007, Deputy Maricopa County Attorney James Blair reviewed the January 14 police report to determine whether aggravated assault charges should be filed against Plaintiff (id. ¶ 155). He returned the case back to the Mesa Police Department for officers to conduct further investigation and obtain contact information for the witnesses (id. ¶¶ 157, 162). There was no prosecution for the aggravated assault charge because the victim and witness could not be located (Doc. #74 at 12).

### *2. Legal Arguments*

1       Defendant argues that Plaintiff's false arrest claims are barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994), because Plaintiff pled guilty and was convicted of trespassing for the October 28, 2006, December 2, 2006, and January 1, 2007 violations (Doc. #74 at 10). And Defendant submits that even though prosecution for the January 14, 2007 incident did not proceed, that does not affect the probable cause determination (id. at 12).

      As to the excessive force claim, Defendant argues that there is no evidence to support Plaintiff's claim of injury (id. at 13). Defendant maintains that there is overwhelming evidence that Plaintiff's ankle injury actually occurred more than 30 years ago (id.).

      Defendant moves for summary judgment on the equal protection claim on the ground that Plaintiff submits no evidence to suggest that Defendant's actions were racially motivated (id. at 14-15). Defendant asserts that Plaintiff's allegations that various property owners told him Defendant used racial slurs against Plaintiff are hearsay and contradicted by sworn statements from several property owners (id. at 15). Defendant submits that Plaintiff's single allegation that Defendant told Plaintiff to "shut [his] black ass mouth" is insufficient by itself to prove intentional discrimination (id.). Defendant nonetheless argues that because he had probable cause to arrest Plaintiff, the arrest was justified (id.).

      Finally, Defendant contends that he is entitled to qualified immunity because there is no evidence that he used excessive force or violated any of Plaintiff's constitutional rights (id. at 16).

### B. Plaintiff's Response[3]

      Plaintiff opposes Defendant's summary judgment motion (Doc. #86). He contends that Defendant targeted Plaintiff because of Plaintiff's minority status and enforced a racially-motivated trespass ordinance, in which area businesses were pressured to participate (id. at 1-2). Plaintiff alleges that two of the affidavits submitted by Defendant are tainted because they are from female, minority property managers who signed them out of fear (id. at 2). Plaintiff notes that both these affidavits omit relevant information, such as the fact that

---

[3] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), informing Plaintiff of his obligation to respond (Doc. #81).

Plaintiff regularly communicated with these managers and worked with them on various issues and projects (id. at 2-3).

Plaintiff alleges that he has an old injury to his left Achilles tendon from the 1970s and that it was aggravated when Defendant assaulted him during an earlier arrest on May 19, 2006 (id. at 4). Plaintiff asserts that after the May excessive-force incident, he was put in an ankle cast and used crutches (id.). He states that after the second assault by Defendant on January 14, 2007, Plaintiff used those same crutches after he was released from the jail (id.).

Plaintiff reiterated his allegations concerning the January 14, 2007 incident and his claims that Defendant used racial slurs and slammed his leg in the car door (id.). Plaintiff notes that the arguments presented by Defendant are the same arguments previously submitted in Defendant's first summary judgment motion, which the Court denied (id. at 5). Plaintiff contends that as before, genuine issues of material fact exist that preclude summary judgment (id.).

Plaintiff submits a separate Statement of Facts in which he disputes many of Defendant's contentions (Doc. #87, PSOF).[4] Plaintiff asserts that Defendant coerced or threatened to withhold police protection to Jaime Garcia, manager of AutoZone, and Plaintiff asserts that Defendant used racial slurs against Plaintiff and other business owners (Doc. #87, PSOF ¶¶ 1-2). Plaintiff further asserts that he complained of an injury to his ankle (PSOF ¶ 4).

In response to Defendant's claim that he had probable cause for an arrest, Plaintiff argues that the January 14 alleged victim and witness were "known mentally ill drunks"; thus, there was no rational basis for Plaintiff's arrest (id. ¶ 7). Plaintiff also disputes

---

[4]PSOF is supported by copies of Marin's and Romero's affidavits (Doc. #87, Exs. 1, 4); excerpts from Defendant's previous DSOF (id., Exs. 2, 14, 16, 18); copies of the Trespass Enforcement Request forms signed by Romero and Jamie Garcia (id., Exs. 6-7), a copy of pages five and six from Defendant's motion (id., Exs. 8, 15); a copy of the Court's prior Order denying Defendant's Motion for Summary Judgment/Motion to Dismiss (id., Ex. 9); Defendant's responses to the Court's Order on discovery (id., Exs. 10-11); a copy of one of Plaintiff's motions to compel (id., Ex. 12); and a copy of Blair's note regarding status of case against Plaintiff (id., Ex. 17).

Defendant's claim of qualified immunity (id. ¶ 11).

**C. Defendant's Reply**

In reply, Defendant reasserts that there is no evidence that Plaintiff's convictions stemming from October 2006, December 2006, and January 1, 2007 have been overturned or invalidated; therefore, Plaintiff's false arrest claims are Heck-barred (Doc. #88 at 2). Defendant also claims that there is nothing to create a material factual dispute whether Defendant had probable cause to arrest Plaintiff for aggravated assault on January 14, 2007 (id.).

Defendant contends that there are no medical records to support Plaintiff's claims that his ankle was injured during an arrest by Defendant, either in May 2006 or January 2007 (id. at 3). Defendant further contends that there is no evidence that Defendant's arrests of Plaintiff were motivated by racial animus, and Plaintiff's claims to the contrary are supported only by inadmissible hearsay and unsupported suppositions (id.). Defendant concludes that there is also no evidence of a material fact that defeats qualified immunity for Defendant (id.).

**III. Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). But Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. If the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**IV. Analysis**

    **A. Equal Protection Claim**

        *1. Legal Standard*

To succeed on his equal protection claim, Plaintiff must prove that Defendant "acted in a discriminatory manner and that the discrimination was intentional." Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003) (citation omitted); see Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995) ("the Equal Protection Clause requires proof of discriminatory *intent* or *motive*"). Race is a suspect class for the purposes of an equal protection claim. See N.A.A.C.P., Los Angeles Branch v. Jones, 131 F.3d 1317, 1321 (9th Cir. 1997). And in this case, there is no dispute that Plaintiff is African American and of a different race than Defendant (Doc. #5 at 3a; Doc. #86 at 1).

To survive summary judgment, Plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision . . . was racially motivated." Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 754 (9th Cir. 2001) (citation and quotations omitted). Without proof of discriminatory intent or motive, Plaintiff's race-based equal protection claim cannot lie. See Navarro, 72 F.3d at 716. Further, evidence that Defendant and Plaintiff are of a different race combined with a disagreement as to the reasonableness of the arrest is insufficient to show an Equal Protection Clause violation. See Bingham, 341 F.3d at 948.

### *2. Discussion*

Initially, the Court notes that Plaintiff relies on the Court's prior Order, which found that there was a material dispute whether Defendant's conduct was racially motivated (Doc. #86 at 5, referring to Doc. #30 at 12). In his first summary judgment motion, however, Defendant did not present an argument on the equal protection claim. Instead, he construed Plaintiff's claim solely as one for excessive force and defamation (see Doc. #24 at 6). Accordingly, summary judgment on the equal protection claim was denied (Doc. #30 at 12).

But in the pending motion, Defendant cites case law applicable to equal protection claims and argues that there is insufficient evidence to support Plaintiff's case (Doc. #74 at 14-15). If Defendant can point to the pleadings and sufficiently argue that Plaintiff has failed to establish an element essential to his case, then Plaintiff must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial. See Celotex, 477 U.S. at 325 (the initial burden on summary judgment "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence . . . ."); Fed. R. Civ. P. 56(e). If Defendant sufficiently discharges the initial burden, then Plaintiff must "present affirmative evidence from which a jury might return a verdict in [his] favor." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation and internal quotation omitted).

In support of his claim that Defendant's conduct was motivated by racial animus, Plaintiff submits that Defendant conducted "countless stops"of Plaintiff, including five

1  trespassing arrests, and used racial slurs when referencing Plaintiff (Doc. #86 at 1). In his
2  verified First Amended Complaint, Plaintiff set forth more specific allegations regarding
3  Defendant's racial remarks. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995)
4  (verified complaint setting forth specific facts may be treated as an affidavit in opposition to
5  summary judgment). Plaintiff alleged that a store manager in the area, Jaime Garcia, stated
6  that Defendant referred to Plaintiff as a convict who "sells drugs [and] will bring other blacks
7  to area" (Doc. #5 at 3a). Plaintiff alleged that the owner of the Texaco station, Joe Pole,
8  heard Defendant use racist remarks when talking about Plaintiff (id.). Plaintiff also stated
9  that the alleged victim in the January 14, 2007 incident, Baker, told Plaintiff that Defendant
10  forced him to make a false claim against Plaintiff, and that Defendant said he "wanted to rid
11  the area of niggers" (id. at 3a). Lastly, Plaintiff averred that during the January 14 incident,
12  Defendant referred to Plaintiff with the term "black ass" (id. at 3b).

13  As noted by Defendant, there are no sworn statements from Jamie Garcia or Joe Pole.
14  Because Plaintiff's statements as to what these two property owners said are offered for the
15  truth of the matter asserted in the statements, they constitute hearsay and are inadmissible.
16  See Fed. R. Evid. 801(b); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002) (hearsay
17  evidence is inadmissible and may not be considered on summary judgment). Moreover,
18  Defendant submits affidavits of two other property owners who attest that they never heard
19  Defendant use derogatory racial remarks in reference to Plaintiff (Doc. #80, Ex. 19, Marin
20  Aff. ¶ 4; Ex. 20, Romero Aff. ¶ 7). Plaintiff disputes the sworn statements of these two
21  property owners and asserts that they were coerced into providing affidavit testimony
22  favorable to Defendant (Doc. #86 at 2-3; Doc. #87, PSOF ¶ 1). But there is no evidence to
23  support Plaintiff's conclusory allegation that Marin's and Romero's affidavits are not
24  trustworthy or that there was any coercion. Plaintiff's unsupported allegations as to what
25  was allegedly "omitted" from their affidavits does not constitute admissible evidence. See
26  Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982) (evidence in opposition
27  to summary judgment must be probative and properly supported). In addition, Plaintiff's
28  assertion as to what the alleged victim—Baker—told Plaintiff that Defendant said to Baker

also constitutes hearsay because Plaintiff seeks to rely on the truth of the matter stated and there is no sworn statement from Baker.

Thus, Plaintiff's admissible evidence of discriminatory intent is limited to his own sworn statement that during the course of his arrest on January 14, 2007, Defendant told Plaintiff to "shut [his] black ass mouth" (Doc. #5 at 3b). This contention may be sufficient to demonstrate racial animus. See Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987). Nonetheless, summary judgment is still warranted if Defendant shows that Plaintiff's arrest and the manner of dealing with Plaintiff (1) would have occurred even absent a discriminatory purpose or (2) was justified by some compelling governmental interest. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 271 n. 21 (1977) (stating that if the plaintiff proffers evidence that the defendant's decision was racially motivated, the burden shifts to the defendant to establish that he would have made the same decision absent consideration of the discriminatory purpose).

With respect to the January 14, 2007 arrest, the record shows that Defendant received a radio call that someone with a lead pipe was threatening a person in the area of 406 North Country Club Drive (Doc. #75, Ex. 1, Def. Aff. ¶ 11). There is no dispute that when Defendant arrived at that location, Plaintiff was on the scene and holding lead pipe in his hand. Defendant attests that his decision to arrest Plaintiff was also based on information provided to him by Officer Bake (Doc. #75, Ex. 1, Def. Aff. ¶ 20). Although Bake's affidavit testimony as to what the alleged victim told Bake is hearsay,[5] Defendant could rely on what Bake told him when deciding whether to arrest Plaintiff. See Fed. R. Evid. 803(3) (hearsay exception where statement offered to show state of mind induced in the listener). On this record, there is sufficient evidence to demonstrate that Defendant would have arrested Plaintiff even absent any discriminatory purpose. And the parties' disagreement as to whether the January 14 arrest or any other arrest was warranted, alone, cannot support

---

[5]Similarly, Defendant's affidavit testimony as to what a witness, Mr. Wells, told him is inadmissible hearsay and is not considered in the summary judgment analysis (see Doc. #75, Ex. 1, Def. Aff. ¶ 19).

1  Plaintiff's equal protection claim. See Bingham, 341 F.3d at 948. Summary judgment will
2  therefore be granted on the equal protection claim.

### B. False Arrest Claim

#### *1. Legal Standard*

The Fourth Amendment provides that officers must have probable cause before arresting someone without a warrant. Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009). Thus, to prevail on his false arrest claim, Plaintiff must demonstrate that there was no probable cause to arrest him. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998).

Probable cause is an objective standard; therefore, "[t]he arresting officers' subjective intention . . . is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes." U.S. v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." Id. (citation omitted). In its probable cause determination, a court must avoid hindsight analysis; whether probable cause existed depends on the "facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). And in determining whether there is probable cause, an officer may rely on hearsay or other evidence that would not be admissible in a court. Hart v. Parks, 450 F.3d 1059, 1066-67 (9th Cir. 2006).

#### *2. Discussion*

Defendant mistakenly construes Plaintiff's false arrest claim as applying to all of his arrests by Defendant (see Doc. #74 at 10-12). Plaintiff's false arrest claim, however, applies only to his arrest on January 14, 2009 (see Doc. #5 at 4; Doc. #30 at 8). With regard to this incident, Defendant submits that he had probable cause to arrest Plaintiff (Doc. #74 at 12).[6]

---

[6] Defendant's Heck-bar argument does not apply to the January 14, 2007 arrest incident because Plaintiff was never convicted. See Wallace, 549 U.S. at 393 (Heck rule applies only when there exists a conviction or sentence that has not been invalidated).

The probable cause determination is based upon the information Defendant had at that time he arrested Plaintiff. Devenpeck, 543 US. at 152. As addressed above, the record shows that there was a radio call that a subject matching Plaintiff's description was assaulting someone with a lead pipe; that Plaintiff was at the specific location with a lead pipe in his hand; and that Officer Bake reported to Defendant that the victim identified Plaintiff as the assailant (Doc. #75, Ex. 1, Def. Aff. ¶¶ 11, 13, 20). Based on this information, Defendant could have reasonably believed that Plaintiff committed an assault.

Plaintiff's belief that his arrest was racially motivated is not relevant because probable cause is an objective standard. See Lopez, 482 F.3d at 1072; see also Whren v. United States, 517 U.S. 806, 813 (1996) (officer's actual motivation plays no part in probable cause analysis). Also, that Plaintiff was never prosecuted for the alleged aggravated assault does not affect that probable cause determination. See Beauregard v. Wingard, 362 F.2d 901, 903 (9th Cir. 1966).

The Court finds that in light of the totality of the circumstances known to Defendant at the time he arrested Plaintiff, there was probable cause for the arrest. Defendant will be granted summary judgment on the false arrest claim.

**B.     Excessive Force Claim**

***1. Legal Standard***

Like the false arrest claim, the excessive force claim is analyzed under the Fourth Amendment; however, the two analyses are distinct factual inquiries. Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) (citing Beier v. City of Lewiston, 354 F.3d 1058, 1064 (9th Cir. 2004)). A claim that police officers have used excessive force in the course of an arrest is analyzed under the Fourth Amendment's "reasonableness" standard set out in Graham v. Connor. 490 U.S. 386, 395 (1989). The pertinent question is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Id. at 397. This analysis requires "a careful balancing of the nature and quality of the intrusion . . . against the countervailing government interests at stake." Id. at 396. Also, the reasonableness of the

use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." Id.

The objective reasonableness inquiry under Graham is a three-step analysis. Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003); see also Bryan v. McPherson, --- F.3d ----, 2009 WL 5064477, at *2-9 (9th Cir. Dec. 28, 2009). First, courts must evaluate the type and amount of force used. Miller, 340 F.3d at 964. Second, courts must assess the importance of the governmental interests at stake by considering the factors set out in Graham; "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Lastly, courts must balance the "gravity of the intrusion on the individual against the government's need for the intrusion . . . ." Miller, 340 F.3d at 964. It is this last step addressing the need for force that is at the heart of Graham. Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (citation omitted). And where there is no need for force, any forced used is excessive. Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000), vacated and remanded on other grounds, County of Humboldt v. Headwaters Forest Def., 534 U.S. 801 (2001).

### *2. Discussion*

Plaintiff asserts that Defendant used excessive force when he slammed the car door on Plaintiff's ankle (Doc. #5 at 3b; Doc. #87, PSOF ¶ 9). Defendant maintains that the car door may have hit Plaintiff's legs, but if so, it was unintentional (Doc. #75, DSOF ¶¶ 90, 94).

Defendant contends that Plaintiff's excessive force claim fails because there is no evidence to support his injury claims (Doc. #74 at 13-14). Defendant relies on Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001), to argue that without evidence of injury, Plaintiff cannot maintain his excessive force claim (Doc. #74 at 13). In Arpin, the Ninth Circuit found that the plaintiff did not provide any medical records to support her claim that she suffered injury as a result of hand-cuffing by the defendant. Arpin, 261 F.3d at 922. But in addition to the lack of support for her injury, the Court also found

that the Plaintiff provided no specific facts but only "conclusory allegations" that were unsupported by factual data such as medical records. Id. at 921-22. Thus, the determination that the amount of force used was reasonable did not rest solely on the lack of medical records to support the plaintiff's injury but also on Plaintiff's lack of specific facts alleging excessive force. Indeed, the Ninth Circuit has stressed that the relevant question "is whether the force used was reasonable in light of *all* the relevant circumstances." Hammer v. Gross, 932 F.2d 842, 846 (9th Cir. 1991) (emphasis in original).

When considering the totality of the circumstances in the instant action, the Court cannot conclude that the use of force was reasonable. First, when taking Plaintiff's allegations as true, the type and amount of force used—slamming a car door on Plaintiff's ankle—was more than insignificant. Defendant implies that the force must not have been considerable because there is no evidence supporting Plaintiff's injury (Doc. #74 at 13). But the Ninth Circuit has held that force can be unreasonable even absent any physical injury. Bryan, 2009 WL 5064477, at *3 (citations omitted). Still, the presence of injuries can be relevant in evaluating the degree of force used, so the Court reviews the evidence going to Plaintiff's injury.

Plaintiff's evidence supporting injury are his statements that he suffered pain and eventually used crutches after his release from jail on January 17 (Doc. #5 at 3b; Doc. #86 at 4; Doc. #87, PSOF ¶ 4).

Defendant submits extensive documentation showing that Plaintiff suffered an ankle injury in 1970 and has received treatment for ongoing ankle problems over the years (see Doc. #77, Ex. 12 (Part 8); Doc. #78, Exs. 13-14). Defendant also proffers numerous documents showing that Plaintiff consistently complained about his old ankle injury and requested a lower bunk during jail confinements prior to January 14, 2007 (Doc. #75, DSOF ¶¶ 152-154, Doc. #77, Ex. 12 (Part 8)). Defendant maintains that these jail records also show that during his confinement from January 14-17, Plaintiff received no treatment for his ankle, he was not issued crutches, and he did not request a lower bunk (id., DSOF ¶ 149).

The Court notes, however, one exhibit labeled as Plaintiff's "Receiving Form"—the

intake form completed on January 14 when Plaintiff arrived at the jail (Doc. #77, Ex 12, (Part 8-Bates No. 000178)). This form documents that Plaintiff had difficulty walking and that an evaluation with a triage nurse was requested (id.). There appears to be no medical record from a triage nurse evaluation.[7]

In short, the Court finds that the medical records do not conclusively demonstrate whether Plaintiff was injured on January 14 during his arrest. Regardless, because the focus in this first step is the degree of force used and not the degree of injury, the initial analysis weighs slightly in Plaintiff's favor.

The second step of the analysis looks at the Graham factors. The initial factor is the severity of the crime. Here, the crime at issue is an alleged aggravated assault, which is serious. The most important Graham factor, though, is whether Plaintiff posed an "immediate threat to the safety of the officers or others." Bryan, 2009 WL 5065577, at *5 (quoting Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)). At the time of the alleged excessive force, Plaintiff was already hand-cuffed and sitting in the patrol car, and there is no assertion that Plaintiff was dangerous or posed a threat to Defendant or anyone else in the area. Nor is there any suggestion that Plaintiff was trying to escape, evade arrest, or get out of the car. Consequently, the second step favors Plaintiff.

Finally, the Court must consider whether the force used was reasonably necessary under the circumstances. Because Plaintiff posed no threat and was not attempting to evade arrest or flee, it appears that there was no need for any use of force. Accordingly, the three-step analysis supports Plaintiff's claim if his testimony is believed, that Defendant's conduct could have been excessive.

Nonetheless, if Defendant's action in shutting the car door on Plaintiff's ankle was accidental, it would not amount to excessive force. See Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (negligent or accidental conduct by police officers does not constitute a Fourth Amendment violation). But on this point, the parties disagree. Defendant submits

---

[7]Defendant's exhibits number approximately 917 pages (Doc. ##75-80, Exs. 1-23).

that the car door may have hit Plaintiff's leg and, if it did, it was not intentional (Doc. #75, Ex. 1, Def. Aff. ¶¶ 16-17). Plaintiff specifically alleges that he asked Defendant to let him get his legs in the car but that Defendant told him to "shut [his] black ass mouth" and slammed the door on his left ankle (Doc. #5 at 4). If a jury believed Plaintiff's version of the incident, it could reasonably find that Defendant's conduct constituted excessive force.

In light of the material factual dispute whether Defendant's conduct was intentional and excessive or simply accidental, the reasonableness question cannot be resolved on summary judgment.

### 3. *Qualified Immunity*

Defendant asserts that he is entitled to qualified immunity on the remaining excessive force claim (Doc. #74 at 16).

A defendant is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity analysis originally involved two inquiries: whether the facts alleged or shown by the plaintiff establish a constitutional violation and whether the right at issue was clearly established at the time. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Supreme Court recently held that courts have discretion in deciding which prong to address first and, depending on the circumstances, may bypass the first inquiry and proceed directly to the qualified immunity question. Pearson v. Callahan, 129 S. Ct. 808, 818-19 (2009).

Here, the Court has already determined that disputed facts, viewed in the light most favorable to Plaintiff, create a triable issue of fact regarding whether Defendant used excessive force in violation of the Fourth Amendment. Thus, the qualified immunity analysis turns on whether Defendant can demonstrate that his conduct did not violate clearly established law. Saucier, 533 U.S. at 201.

Defendant wholly fails to address this qualified immunity inquiry. He merely argues that he did not violate any of Plaintiff's constitutional rights and there is no evidence to show that he used excessive force against Plaintiff (Doc. #74 at 16). This argument rests on

disputed facts construed in Defendant's favor. "Where the [officer's] entitlement to qualified immunity depends on the resolution of disputed issues of fact in [his] favor, and against the non-moving party, summary judgment is not appropriate." Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th Cir. 2003).

Consequently, Defendant is not entitled to qualified immunity, and summary judgment will be denied on the excessive force claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. #74).

(2) Defendant's Motion for Summary Judgment (Doc. #74) is **granted in part** and **denied in part** as follows:

    (a) the motion is **granted** as to the equal protection claim in Count I and the false arrest claim in Count II;

    (b) the motion is otherwise **denied**.

(3) The remaining claim is the excessive force claim in Count I.

DATED this 21st day of January, 2010.

*/s/ H. Murray Snow*
G. Murray Snow
United States District Judge